UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

LINDA K. CLEMONS,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　PLAINTIFF,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　　　)　　CASE NO. 13-CV-195-FHM
　　　　　　　　　　　　　　　　　　　)
CAROLYN W. COLVIN, Acting　　　　　　)
Commissioner of the Social Security　　)
Administration,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　DEFENDANT.　　　　　　　　　)

## OPINION AND ORDER

Plaintiff, Linda K. Clemons, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th

---

[1] Plaintiff, Linda K. Clemons's applications for Disability Insurance and Supplemental Security Income benefits were denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) Charles Headrick, was held March 18, 2010. By decision dated July 14, 2011, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on February 1, 2013. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

1

Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

For the reasons discussed below, the Court AFFIRMS the decision of the Commissioner.

## **Background**

Plaintiff was 45 years old on the alleged date of onset of disability and 47 years old on the date of the denial decision. She completed high school and one year of college and formerly worked as a licensed practical nurse (LPN). Plaintiff claims to have been unable to work since July 30, 2009 due to coronary artery disease, bipolar disorder, post-traumatic stress disorder (PTSD), asthma, diverticulitis, whiplash, and kidney stones and infections. [R. 160].

2

**The ALJ's Decision**

The ALJ determined that the Plaintiff's severe impairments include a history of diverticulitis or diverticulosis, status/post cardiac stents, abdominal pain, asthma, depression, and history of drug abuse and addiction. [R. 11]. The ALJ further determined that Plaintiff has the residual functional capacity to perform light[2] work except that she should avoid concentrated exposures to extreme heat, cold, wetness, and humidity. Plaintiff should be limited to simple, repetitive tasks, although she is able to occasionally perform detailed work, and should avoid all contact with the general public. [R. 14].

Although Plaintiff was unable to perform her past relevant work, based on the testimony of the vocational expert, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. [R. 30]. Accordingly, the ALJ determined that Plaintiff was not disabled. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

---

[2] Pursuant to CFR § 404.1567, light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

**Plaintiff's Allegations**

Plaintiff asserts that the ALJ: 1) failed to perform a proper Step Four and Step Five determination ; 2) failed to properly consider the medical source opinions; and 3) failed to perform a proper credibility determination.

**Analysis**

Step Four and Step Five Determinations

Plaintiff argues that it was error for the ALJ to have the vocational expert review Exhibits 24F and 25F to ascertain Plaintiff's physical and mental limitations rather than to orally instruct the expert as to each limitation in framing a hypothetical question. Plaintiff contends that consequently there is no way to verify that the postural restrictions (regarding stooping and crouching) or environmental limitations (restrictions on concentrated exposure to extreme cold, heat, wetness, and humidity) were actually considered by the vocational expert. [Dkt. 18, p. 2]. Plaintiff asserts that the ALJ's failure to orally state the physical and mental limitations to the vocational expert was prejudicial to Plaintiff because "[i]t is totally unknown if the VE took these limitations into consideration, or whether the job base was constricted due to their presence." *Id.*

The ALJ had the following discussion with the vocational expert regarding the mental and physical limitations of the hypothetical individual:

> ALJ: And have you studied the record of Linda Clemons and heard her testimony regarding her work history?
>
> VE: Yes, sir.
>
> ALJ: Do you require any clarification or elaboration?
>
> VE: No, sir, thank you.

4

<pre>
                            *    *    *

      ALJ:   Assume the claimant to be a – I think she was age, let's
             see, she would have been age 44 I believe at the
             amended onset date, 44-year-old female with high
             school education plus some college. The ability to read,
             write and use numbers, assume further the individual in
             general has the physical capacity to perform work
             consistent with limitations of Exhibit 25F that she has
             mental or functional limitations consistent with Exhibit
             24F. Assuming all the foregoing could such an
             individual return to any of her past work?

      VE:    Judge, based on both those documents she would not
             be able to return to past work. The physical RFC
             basically limits her to light work activity and the mental
             RFC indicates that basically simple and some complex
             – I read that some complex would be maybe in the
             semiskilled rather then (sic) a skilled area.

      ALJ:   Would there be other unskilled work such an individual
             could perform?

      VE:    Judge, based on, on the two documents together I
             would think there would be light, unskilled jobs and
             sedentary jobs that would be available.   . . .
</pre>

[R. 54-55]. From this exchange, it is clear that the vocational expert considered the physical and mental limitations presented in Exhibits 25F and 24F. Additionally, Plaintiff's counsel also referred to Exhibit 24F during the cross-examination of the vocational expert:

<pre>
      ATTY:      In these other, in this other work that you've
                 listed how – the RFC that is Exhibit 24F it talks
                 about limited relating to coworkers and
                 supervisors on a limited basis. These jobs that,
                 that you've listed how does that, how does that
                 limitation play into this other work that you've
                 listed in the Judge's first hypothetical?
</pre>

5

| | |
|---|---|
| VE: | Well, I, the, I did note that indicated no general public, the public but he didn't say couldn't relate to coworkers or supervisors. And I would – it says limited on those things I generally – I think that would have to do with more than simple activity. |
| ATTY: | Doesn't have to do with the frequency of, of dealing with those people? |
| VE: | Wait a minute, let me back up here. It says can relate, can work normal workday and week, can adapt to work setting, can relate on a limited basis for coworkers and supervisor, could not work with general public. So your question was considered limiting, is that what you meant? |
| ATTY: | These jobs, the sorting, laundry press work, the hand packaging, assembly and inspecting jobs, I mean what kind of contact are those people going to – are those employees going to have with coworkers and supervisors? |
| VE: | Well you have contact with them. Most of the jobs are of course unskilled so there really, I wouldn't see any real need and real depth in supervision or – I guess we'd have to ask that doctor what he means by limited but I base it on just my knowledge of the work setting. |

[R. 56-57].

Plaintiff's argument that there is no independent verification that her mental or physical limitations had been considered is contradicted by the vocational expert's indication that he was familiar with the record, and by the vocational expert's reference to the contents of the exhibits when responding to questions posed by both the ALJ and Plaintiff's counsel. Further, Plaintiff has not shown that the jobs identified by the vocational expert are excluded by the limitations contained in Exhibits 24F and 25F. The court finds

the ALJ's decision, based on the vocational expert's testimony, is supported by substantial evidence.³

Plaintiff argues that the ALJ erred by not including in the RFC the "moderate" limitations in the paragraph B criteria addressed in the psychiatric review technique (PRT). When there is evidence of a mental impairment that allegedly prevents a claimant from working, the ALJ must follow the procedure for evaluating mental impairments set forth in the regulations and is required to document in the decision the application of the procedure, known as the Psychiatric Review Technique (PRT). 20 C.F.R. §§ 404.1520a(e), 416.920a(e), *Carpenter v. Astrue,* 537 F.3d 1264, 1268 (10th Cir. 2008)(discussing application of the psychiatric review technique by the ALJ), *Cruse v. United States Dep't of Health & Human Servs.,* 49 F.3d 614, 617 (10th Cir. 1995)(same). The procedure for evaluating alleged mental impairments requires the ALJ to consider the effect of the mental impairment on four broad areas of functioning known as the "paragraph B" criteria: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation of extended duration. See 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(C). These "paragraph B" limitations are not an RFC assessment, rather they rate the severity of mental impairments at steps 2 and 3 of the evaluative sequence. Social Security Ruling (*SSR*) 96-8p, 1996 WL 374184 at *4. That is, the "paragraph B" criteria help the ALJ determine at step 2 whether the claimant has severe mental limitations and

---

³ This court is generally critical of the ALJ's presentation of exhibits to the vocational expert from which the expert is expected to glean limitation for a hypothetical question. Such a procedure invites confusion and needlessly introduces an opportunity for miscommunication and misunderstanding not present when the ALJ verbally formulates the hypothetical question. However, in this case it is apparent there was no confusion or misunderstanding. *See Tietjen v. Colvin,* 527 Fed.Appx. 705, 710 (10th Cir. 2013)(affirming Commissioner's decision, although critical of hypothetical by exhibit).

7

whether the mental limitations meet some of the criteria of the Listings of Impairments[4] for mental disorders at step 3.

The ALJ's RFC finding appropriately included the work-related functional limitations that result from the "paragraph B" findings. The ALJ specifically stated Plaintiff was limited to simple, repetitive work and should avoid all contact with the public due to mood swings, depression, and mental impairments. [R. 14]. These mental work-related limitations are the same ones found to exist by Dr. Carolyn Goodrich, Ph.D., the non-examining psychologist who reviewed the records for the Disability Determination Service (DDS). Dr. Goodrich completed a Mental Residual Functional Capacity Assessment, [R. 445-447], where she concluded:

> Clmt (sic) can work a normal day and week. She can adapt to work setting. She can relate on limited basis with coworkers and supervisors. She should not work with the public. She can understand, remember and carry out simple and some complex tasks.

[R. 447]. The ALJ gave Dr. Goodrich's opinion great weight and incorporated her opinion expressed in Exhibit 24F into the hypothetical question and RFC assessment. The court finds Plaintiff's argument that the ALJ failed to include Plaintiff's mental limitations into the RFC assessment is without merit. In finding Plaintiff limited to performing simple, repetitive tasks with no interaction with the general public, the ALJ appropriately accounted for work-related limitations supported by substantial evidence. [R. 14].

---

[4] The Listings describe, for each of the major body systems, medical findings which are considered severe enough that they represent impairments which presumptively prevent a person from performing any gainful activity. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Plaintiff complains that the ALJ did not show the paragraph B findings to the vocational expert, which Plaintiff claims is error. However, since the paragraph B criteria are not expressed in terms of work-related limitations, it is not appropriate to include them in hypothetical questioning of a vocational expert. Rather, it is the work-related limitations that flow from the paragraph B findings that form the basis of the hypothetical question to the vocational expert. The work-related limitations expressed in Exhibit 24F were presented to the vocational expert. See Chrismon v. Colvin, 531 Fed.Appx. 893, 897-898 (10th Cir. 2013)(explaining PRT findings are not RFC findings, and discussing interplay between PRT and mental RFC).

Consideration of Medical Source Information

Plaintiff argues that the ALJ failed to weigh all opinions contained in the record and failed to describe how he weighed the medical source opinions. The record does not contain any opinions of Plaintiff's treating physicians. The only opinions concerning Plaintiff's ability to work are those of the State Disability Determination Service experts who review of the medical record, rendered opinions about her ability to work. [R. 445-447, 449-456, 457-472]. The regulations instruct that State agency medical or psychological consultants are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation" whose findings must be considered as opinion evidence. 20 C.F.R. § 404.1527(f)(2)(I); 20 C.F.R. § 416.927(f)(2)(I). The ALJ accorded their opinions "great weight," [R. 21], and incorporated these opinions into the RFC finding. The court finds no error in the ALJ's treatment of the opinions of the State Disability Determination Service experts.

Plaintiff argues that the ALJ erred in his treatment of the lay third-party function report of Larry Pruitt. [R. 174-181]. The ALJ indicated that the report of Mr. Pruitt was discounted because it was prepared by Plaintiff.  The court finds no error in the ALJ's treatment of this report.  [R. 22-21].

Credibility Determination

Plaintiff argues that the ALJ failed to perform a proper credibility determination. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir.2005) (internal quotation marks omitted). But "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. *Id.* (brackets and internal quotation marks omitted).

The ALJ cited numerous grounds, tied to the evidence, for the credibility finding, including: Plaintiff's inconsistent statements about her activities; receipt of only routine medical treatment; failure to follow up on referrals to medical specialists; and failure of the medical record to support allegations. [R. 19-21].  The ALJ thus properly linked his credibility finding to the record.  Therefore, the court finds no reason to deviate from the general rule to accord deference to the ALJ's credibility determination.

## **Conclusion**

The court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts.  The court further finds there

is substantial evidence in the record to support the ALJ's decision. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 23rd day of May, 2014.

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE